ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **INMOBILIARIA 1254, S.E.; ADMA, INC.; CARIBE TECNO, INC.; CARIBE TECNO, CRL, CTE RENTAL EQUIPMENT, INC.** RECURRENTE(S) <br><br> V. <br><br> **OFICINA DE PERMISOS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN** AGENCIA RECURRIDA(S) <br><br> **EVINMOTOR'S PR, INC.** PARTE INTERESADA <br><br> **401 DE DIEGO; LLC** OTROS INTERVENTORES | KLRA202400166 | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente de la Oficina de Permisos del Municipio Autónomo de San Juan <br><br> Caso Núm. **2022-444257-CUB-006076** <br><br> Sobre: Consulta de Ubicación |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Boria Vizcarrondo.[1]

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 17 de marzo de 2026.

Comparece(n) ante este Tribunal de Apelaciones, **INMOBILIARIA 1254, S.E.**; **ADMA, INC.**; **CARIBE TECNO, INC.**; **CARIBE TECNO, CRL**; y **CTE RENTAL EQUIPMENT, INC.**, (**INMOBILIARIA** y **OTROS**) mediante un *Recurso de Revisión Judicial* instado el 1 de abril de 2024. En su escrito, nos solicita(n) que revisemos la *Resolución de Consulta de Ubicación Sustituta* decretada el 29 de febrero de 2024 por la **OFICINA DE PERMISOS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN (OPMASJ)**.[2] Mediante este fallo, entre otras cosas, se dejó sin

---

[1] En virtud de la *Orden Administrativa OATA-2025-019* de 10 de febrero de 2025 se designó a la Jueza Lersy G. Boria Vizcarrondo para sustituir a la Jueza Camille Rivera Pérez quien cesó sus funciones en el Tribunal de Apelaciones.

[2] Este dictamen administrativo fue notificado y archivado en autos el 4 de marzo de 2024. Apéndice de *Recurso de Revisión Judicial,* págs. 734-753.

efecto la *Resolución de la Consulta de Ubicación* emitida el 5 de octubre de 2022 y notificada el 19 de abril de 2023. En consecuencia, se aprobó y autorizó el uso solicitado, excepto el uso del taller de reparación, esto concerniente a la **Consulta de Ubicación Núm. 2022-444257-CUB-006076**. Además, se incluyó un listado de requerimientos y recomendaciones.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 22 de julio de 2022, **EVINMOTOR'S PR, INC. (EVINMOTOR'S)** presentó una *Consulta de Ubicación,* por medio del Agrimensor Daniel Gómez Marrero, con el propósito de lograr un *permiso único* para la venta de automóviles, motocicletas y vehículos recreacionales (tales como: *carros de golf, Can-Am, "four tracks" y "jet ski"*); venta de accesorios, venta de piezas, área de almacén, taller de reparaciones, un "showroom", oficina administrativa y, un área de estacionamiento.[3]

Tiempo después, el 8 de septiembre de 2022, **INMOBILIARIA** y **OTROS** presentaron una *Solicitud de Intervención.*[4] Esencialmente, razonaron que **EVINMOTOR'S** opera de manera ultra vires e inconsistente con el permiso de uso que le expidieron; han incumplido crasamente con el ordenamiento territorial existente al palio de los reglamentos conjuntos 2019 y 2020. Además, aseguraron que las operaciones de **EVINMOTOR'S** ocasionan interrupciones al tránsito de la zona y afecta regularmente las entidades comerciales contiguas.

Así las cosas, el 20 de diciembre de 2022, la **OPMASJ** concretó *Resolución sobre Solicitud de Intervención* autorizando a **INMOBILIARIA** y **OTROS** como parte interventora.[5] No obstante, no se les informó sobre el referido estatus de la *Consulta de Ubicación*.

---

[3] Apéndice de *Recurso de Revisión Judicial*, págs. 1-160.
[4] *Íd.*, págs. 164-172.
[5] *Íd.*, págs. 183-190.

Más adelante, el 20 de abril de 2023, **INMOBILIARIA** y **OTROS** recibieron notificación vía correo electrónico con relación a la *Resolución de la Consulta de Ubicación* confiriendo la variación de uso a favor de **EVINMOTOR'S**.[6]

Luego de varios incidentes procesales, el 30 de junio de 2023, en el caso KLRA202300231 ante el Tribunal de Apelaciones (TA), se dictó *Sentencia* mediante la cual se revocó la antedicha *Resolución de Consulta de Ubicación* y le ordenó a la **OPMASJ** celebrar una audiencia pública.[7] Ello con el propósito de conceder plena participación a **INMOBILIARIA** y **OTROS**, así como al público general en aras de garantizar el debido proceso de ley "previo a que la **OPMASJ** determine finalmente si la *Consulta de Ubicación* de **EVINMOTOR'S** procede, según la prueba que obra en el expediente administrativo."

Ulteriormente, el 31 de octubre de 2023, la **OPMASJ**, en cumplimiento con lo ordenado por el foro intermedio, notificó a **INMOBILIARIA** y **OTROS**, así como a otros interventores, demás vecinos y al público en general un *Aviso de Vista Pública*.[8]

El 15 de noviembre de 2023, se celebró la vista pública. Durante los procedimientos, **EVINMOTOR'S** presentó sus argumentos a favor de la aprobación de la *Consulta de Ubicación* y la concesión de las variaciones para la operación del taller de mecánica, almacén y requisitos de estacionamiento[9]. Por su parte, **INMOBILIARIA** y **OTROS** presentaron sus argumentos en contra de la concesión de la consulta. Además, presentaron veintiocho (28) fotos y un (1) video que ilustran las alegadas violaciones a las leyes de tránsito; la falta de un área de carga y descarga adecuada; el uso de las vías públicas como área de pruebas; el uso de estacionamientos como

---

[6] Apéndice de *Recurso de Revisión Judicial*, págs. 191-206.
[7] *Íd.*, págs. 262-276.
[8] Dicha audiencia estaba pautada para el 15 de noviembre de 2023 en el Salón de Vistas Públicas de la Oficina de Permisos del Municipio de San Juan. Apéndice de *Recurso de Revisión Judicial*, págs. 304-308, 324, 334 y 343-345.
[9] *Íd.*, págs. 588-660.

exhibición o almacén; y otros aspectos que demuestran los efectos de la operación desordenada de **EVINMOTOR'S** en la zona.[10]

Con posterioridad, el 8 de enero de 2024, la Oficial Examinadora rindió su *Informe de Vista Pública sobre Consulta de Ubicación* en el cual recomendó denegar todas las variaciones en uso solicitadas por **EVINMOTOR'S**.[11] Entretanto, el 29 de febrero de 2024, la **OPMASJ** dispuso la *Resolución de Consulta de Ubicación Sustituta* impugnada.

El 7 de marzo de 2024, **INMOBILIARIA** y **OTROS** le suplicaron a la **OPMASJ** acceso a la totalidad del expediente administrativo, incluyendo la regrabación de la vista pública.[12] El 13 de marzo de 2024, la **OPMASJ** entregó al mensajero enviado por **INMOBILIARIA** y **OTROS** un USB con la regrabación de la audiencia, así como copia del legajo administrativo.[13]

En desacuerdo, el 1 de abril de 2024, **INMOBILIARIA** y **OTROS** entablaron ante este Tribunal de Apelaciones un *Recurso de Revisión Judicial.* En el mismo, señala el(los) siguiente(s) error(es):

> Erró la OPMASJ al realizar una adjudicación irrazonable de la Consulta de Ubicación la cual no está basada en la totalidad del expediente; mediante una Resolución cuyo lenguaje es impreciso y ambiguo; que no tomó en consideración la prueba ni los argumentos presentados por la parte recurrente como interventora, y que ignora y contradice los hallazgos y recomendaciones de la Oficial Examinadora.

> Erró la Oficina de Permisos del Municipio [Autónomo] de San Juan al concederle variaciones en uso a Evinmotors para propósitos de estacionamientos y de almac[é]n, a pesar del perjuicio causado a los vecinos colindantes y de que el peticionario no pudo demostrar que estas variaciones proceden como cuestión de hecho ni de derecho.

> Erró la Oficina de Permisos del Municipio [Autónomo] de San Juan al determinar que la venta de motoras acuáticas, motocicletas, y vehículos todo terreno (coloquialmente denominados CAN-AM) es un uso ministerial en el Distrito C-I y, por consiguiente, erró al aprobar la Consulta de Ubicación solicitada por Evinmotors.

---

[10] Apéndice de *Recurso de Revisión Judicial,* págs. 549-587.
[11] *Íd.,* págs. 695-709.
[12] *Íd.,* págs. 754-756.
[13] *Íd.,* págs. 757-764.

El 5 de abril de 2024, intimamos *Resolución* en la cual concedimos un plazo de treinta (30) días a **EVINMOTOR'S** y **401 DE DIEGO** para presentar su(s) alegato(s) en oposición y se reglamentó los procedimientos para la reproducción de la transcripción de la prueba oral (TPO). El 13 de mayo de 2024, la **OPMASJ** presentó su *Alegato de la Parte Recurrida*. Ese mismo día, **EVINMOTOR'S** presentó su *Alegato en Oposición al Recurso de Revisión Judicial* y una *Moción de Desestimación*. En esta última, levantó la defensa de falta de jurisdicción, por el recurso carecer de una notificación adecuada. Seguidamente, el 14 de mayo de 2024, **INMOBILIARIA Y OTROS** presentaron *Solicitud de Término para Presentar Oposición a Moción de Desestimación*, en esencia, esgrimieron que la referida moción carece de fundamentos legales y no procede como cuestión de derecho.

Más tarde, el 4 de junio de 2024, proveímos *Resolución* acogiendo la transcripción de la prueba oral (TPO) de la audiencia celebrada el 15 de noviembre de 2023 y concediéndole a las partes términos para presentar su alegato suplementario y/o alegato de réplica. El día 26 de junio de 2024, **INMOBILIARIA Y OTROS** presentaron su *Alegato Suplementario.* Finalmente, el 15 de julio de 2024, **EVINMOTOR'S** presentó su *Réplica a Alegato Suplementario del Recurso de Revisión Judicial*.

Evaluado concienzudamente el expediente del caso, contando con el beneficio de la comparecencia de todas las partes, y habiéndole dado la debida consideración a la transcripción de la prueba oral (TPO), nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

-II-

- A - *REVISIÓN ADMINISTRATIVA*

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los

procesos de adjudicación y reglamentación en la administración pública.[14] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[15]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[16] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[17] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[18]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[19] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[20] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[21]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[22] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

---

[14] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).

[15] 3 LPRA § 9671.

[16] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).

[17] *Otero v. Toyota*, 163 DPR 716 (2005).

[18] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).

[19] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).

[20] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).

[21] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).

[22] *Torres Rivera v. Policía de PR, supra*.

[L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[23]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[24] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[25] Debido a la presunción de legalidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[26] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[27] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal

---

[23] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud*, 210 DPR 79 (2022).
[24] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).
[25] *Otero v. Toyota, supra*, pág. 728.
[26] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[27] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).

revisor.[28] Aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[29]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[30] Así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello, que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[31]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[32] A *contrario sensu,,* los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial,* o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[33] Del mismo modo, el Prof. Echevarría Vargas ha puntualizado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[34]

### - B - *LEY PARA LA REFORMA DE PERMISOS*

Con la aprobación de la *Ley para la Reforma del Proceso de Permisos de Puerto Rico* se precisó en nuestro ordenamiento legal y administrativo los criterios que rigen el proceso de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico.[35] La precitada disposición tiene como objetivo la transformación del sistema de permisos

---

[28] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).

[29] *Íd.*

[30] *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

[31] *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 1002 (2011).

[32] *García Reyes v. Cruz Auto Corp., supra,* pág. 893.

[33] *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo, supra.*

[34] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.

[35] Ley Núm. 161-2009, 23 LPRA § 9011. *Román Ortiz v. OGPe,* 203 DPR 947, 957 (2020); *Laureano v. Mun. de Bayamón,* 197 DPR 420, 433 (2017); *Horizon v. Jta. Revisora, RA Holdings,* 191 DPR 228, 236 (2014).

en nuestra jurisdicción, de modo que, resulte en uno más transparente, ágil, confiable y eficiente.[36]

De ordinario, incorpora una estructura para la evaluación y otorgamiento de permisos conforme a las leyes y reglamentos aplicables, cuyo objetivo es alcanzar un balance entre el desarrollo económico, la protección de los recursos naturales y la preservación del derecho al disfrute de la propiedad.[37] Igualmente, el mencionado estatuto creó la Oficina de Gerencia de Permisos (OGPe), organismo gubernamental adscrito a la Junta de Planificación, entidad a la cual se le confirió jurisdicción para evaluar, conceder y/o denegar determinaciones finales y permisos relacionados al desarrollo y uso de terrenos en Puerto Rico.[38] Así como, para las consultas de variación en uso, construcción y consultas de ubicación.[39]

En su Artículo 1.5, sobre definiciones, enuncia:

14) *"Consulta de ubicación"* — Es el procedimiento ante la Oficina de Gerencia de Permisos o los Municipios Autónomos con Jerarquía de la I a la V, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, para que evalúen, pasen juicio y tomen la determinación que estimen pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente y que no pueden considerarse mediante otro mecanismo. En áreas no calificadas incluye propuestos usos de terrenos que por su naturaleza y complejidad requieran un grado mayor de análisis.[...]

93) *"Variación"* — autorización para lotificar o desarrollar una propiedad utilizando parámetros diferentes a los dispuestos en la reglamentación vigente y que sólo se concede para evitar perjuicios a una propiedad que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad.[40]

### - C - *REGLAMENTO CONJUNTO 2020*

En este caso, al momento de la evaluación de la consulta de ubicación para considerar variaciones en uso ante la **OPMASJ** se encontraba vigente el *Reglamento Conjunto para la Evaluación y Expedición de Permisos*

---

[36] *Exposición de Motivos*, Ley Núm. 161-2009, *supra*.

[37] *Id*.

[38] 23 LPRA § 9018. Véase, además *Miranda Correa v. DDEC et al.*, 211 DPR 738 (2023).

[39] 23 LPRA § 9018d.

[40] 23 LPRA § 9011 (14) y (93).

*Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios* (*Reglamento Conjunto*).[41]

Específicamente, en lo concerniente a nuestro caso, es preciso justipreciar la Sección 6.1.7.2 mediante la cual se exponen expresamente los usos a permitirse en un Distrito C-I: Comercial Intermedio. Principalmente, un Distrito C-I, "establece... áreas comerciales existentes o [persigue]... crear nuev[o]s que suplan las necesidades de varios vecindarios o comunidades residenciales, así como comercio de intensidad intermedia en los centros fundacionales de los municipios".[42]

En lo referente a los usos permitidos en conformidad a su propósito, el conjunto de normas establece:

> a. Los usos a permitirse en este distrito no pondrán en riesgo la salud, la seguridad y el bienestar de los ocupantes de la propiedad a usarse y de las propiedades limítrofes; serán compatibles con los propósitos y las disposiciones de esta Regla.
> b. Se permitirán los usos del Distrito C–L.[43]

En ese contexto, se puede interpretar razonablemente que cuando el ente administrativo evalúa la documentación sometida para considerar el otorgamiento de permisos y/o variaciones de uso; tiene que ponderarse prioritariamente los riesgos -si alguno- que la concesión del permiso o variación pueda afectar en la salud, seguridad y bienestar general de las

---

[41] Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto de 2020). Es menester señalar que nuestro Tribunal Supremo declaró nulo el *Reglamento Conjunto 2019* y el *Reglamento Conjunto 2020*. En cambio, instituyó que tal determinación de nulidad tiene un efecto prospectivo. Es decir, la nulidad alcanzará solamente a los permisos que se otorguen después de ese proceder. De esa manera, todo permiso autorizado y expedido al amparo de los citados reglamentos, previo a la emisión de ese dictamen, deberán aceptarse como validos por toda la ciudadanía y agencias concernientes. Véase *Martínez Fernández et al. v. OGPe et al.*, 212 DPR 285 (2023).

[42] Sección 6.1.7.1. Reglamento Conjunto 2020.

[43] Cabe destacar que la Tabla 6.43 en la parte inferior de la sección 6.1.7.2 del *Reglamento Conjunto 2020* muestra cuales son los usos de un Distrito C-I. Desde esta perspectiva, tales usos pueden clasificarse en: (i) **comerciales** [Venta al detal y al por mayor, solos o combinados; alquiler de automóvil; exhibición y venta de automóviles]; (ii) **servicios** [servicios según definido en este reglamento; oficinas profesionales; venta de comida confeccionada, incluyendo venta de bebidas alcohólicas; farmacia; estaciones de gasolina; funeraria; hospital para tratamiento de animales, a prueba de ruidos y no se mantengan animales fuera del edificio]; (iii) **industriales** [industrias livianas tales como lavandería comercial, panaderías, taller de costura y bordado, producción de artesanía y taller cerrado de reparación de bicicletas y enseres de uso corriente en el hogar, siempre que en el proceso industrial envuelto no se produzca humo, polvo, gases, ruidos y otras condiciones que puedan resultar perjudicial a las áreas adyacentes] u (iv) **otros** [museos; teatros, vivienda, usos institucionales, cívicos y culturales, en solares con tamaño suficiente para cumplir con los requerimientos de estacionamiento]. Refiérase Sección: 6.1.7.2 del *Reglamento Conjunto 2020*.

propiedades colindantes al inmueble autorizado. Asimismo, la sección 6.1.7.3 enlista los **usos prohibidos** en un Distrito C-I, a los fines de mantener el *carácter comercial,* de forma limitada, de la zona, los cuales son los siguientes:[44]

> a. Usos reservados para el distrito C-C
> b. Comercios para instalación de neumáticos y piezas de vehículos de motor
> c. Ferretería que incluya venta de madera, arena, piedra, cemento, cal, varilla de acero u otros materiales pesados
> d. **Talleres de mecánica**
> e. Talleres de hojalatería y pintura
> f. Talleres de reparación abiertos al exterior.

En resumidas cuentas, se puede interpretar razonablemente que cualquier variación solicitada cuya otorgación implique trabajos mecánicos o de construcción deberá ser denegada de plano por ser un uso prohibido en un distrito C–1.

- III-

**INMOBILIARIA Y OTROS** puntean que la **OPMASJ** aprobó irrazonablemente una consulta de ubicación y variación presentada por **EVINMOTOR'S**. Esgrimen que la misma no está fundamentada en la evidencia sustancial que obra en la totalidad del expediente administrativo. Además, aseguran que **EVINMOTOR'S** indujo a error a la **OPMASJ** al proveerle información falsa para alcanzar la certificación de permisos aun cuando la operación de un concesionario como **EVINMOTOR'S** no está permitido en el distrito comercial intermedio (C-I). Dilucidan, además que la determinación de la **OPMASJ** fue ultra vires y debe ser evaluada como sospechosa, pues descartó de plano el informe del(de la) Oficial Examinador(a), quien no recomendó la otorgación de la consulta y variación. Culminó, manifestado que las operaciones recurrentes de **EVINMOTOR'S** ocasionan problemas mediante la utilización de las áreas exteriores como almacén y la venta de vehículos todoterreno. Adicionalmente, cuestionan la cantidad de

---

[44] Sección 6.1.7.3 Reglamento Conjunto 2020.

estacionamientos que provee el concesionario, pues afirman que no es suficiente para cubrir las operaciones de **Evinmotor's**.

Por el contrario, **Evinmotor's** expresó, que ciertamente la **OPMASJ** autorizó los usos que interpeló, pero no le autorizó el uso del taller de reparaciones. Adujo, además, que los testimonios sobre las fotos y videos son meras especulaciones de opiniones prejuiciadas. Incluso, indicó que en el historial administrativo no hay evidencia de las presuntas obstrucciones en las vías públicas y peatonales que rodean el concesionario. También, infirió que la **OPMASJ** no está obligada en ley a acoger los hallazgos o las recomendaciones del Informe del(de la) Oficial Examinador quien presidió la vista pública.

En esta ocasión, nos corresponde evaluar si la *Resolución de Consulta de Ubicación Sustituta* estuvo fundamentada en evidencia sustancial que surge del récord o, por el contrario, si dicha oficina administrativa actuó de manera irrazonable, arbitraria caprichosa o ilegal.

Primariamente, al analizar concienzudamente la totalidad del legajo debemos apuntalar que la sección 3.3 de la LPAU dispone específicamente que los "oficiales examinadores tienen a cargo la crucial tarea de adjudicar los hechos en controversia durante el transcurso de la vista evidenciaria. Su cargo le exige recopilar, de manera integral, la evidencia presentada en los procedimientos para la formación del expediente administrativo".[45] Por ello, la figura del oficial examinador se encarga de "producir una **recomendación** de como adjudicar el caso mediante un informe. [Sin embargo], a pesar de la encomiable función, el jefe de agencia es quien a última instancia formula la política pública implementada en su administración".[46] Ello implica que, en el presente caso, la **OPMASJ** no estaba obligada a acoger las recomendaciones contenidas en el *Informe de Vista Pública sobre Consulta de Ubicación*.

---

[45] *Com. Seg. v. Real Legacy Assurance*, 179 DPR 692 (2010).
[46] *Íd*., pág. 712. Refiérase también a 3 LPRA § 9653.

De la misma manera, hallamos que, por ejemplo, en las imágenes presentadas, no se muestran las instancias en las que ocurren obstrucciones reales alrededor del concesionario EVINMOTOR'S. Tampoco se desprende de la prueba incidentes que afecten sustancialmente las operaciones normales y habituales en los predios colindantes de la localidad. En el video presentado por INMOBILIARIA Y OTROS., el cual forma parte de la documentación, se mostró un vehículo todoterreno transitando por la Avenida Roosevelt en San Juan, pero más allá de eso, no se documenta incidente alguno. Conviene resaltar, que en las cercanías de EVINMOTOR'S existen múltiples comercios que diariamente están en operaciones, por lo que, periódicamente es una vía naturalmente concurrida y utilizan áreas en su parte frontal para estacionarse.

Entretanto, al evaluar el *Reglamento Conjunto 2020*, específicamente las disposiciones del Distrito C–I: Comercial Intermedio, notamos que claramente la variación de uso pedida por EVINMOTOR'S para utilizar un taller de reparación (mecánica) constituye uno de los usos prohibidos. Así pues, concluimos que la **OPMASJ** actuó razonablemente al dictar su resolución, ya que su determinación está basada en la evidencia sustancial que forma parte integral del historial administrativo y disposiciones legales.

La *Resolución de Consulta de Ubicación Sustituta* está sustentada en el trámite administrativo acompañada de una presunción de corrección. Más aún, no existen fundamentos o motivos que justifiquen nuestra intervención con la discreción administrativa de la **OPMASJ**, en torno a su providencia de aprobar y autorizar "el uso solicitado, sin el uso de taller de reparación y descrito en la Determinación de Hecho de esta resolución y conforme a las recomendaciones y requerimientos establecidos en este informe de aprobación". Tampoco se ha demostrado que la **OPMASJ** haya actuado de manera arbitraria, irrazonable o ilegal. En consecuencia, no procede que sustituyamos el criterio administrativo por la nuestra, y atinamos que

debemos abstenernos de intervenir con la *Resolución de Consulta de Ubicación Sustituta*. Por ello, discernimos que la **OPMASJ** no incidió en el(los) error(es).

### - VI -

Por los fundamentos antes expuestos, ***confirmamos*** la *Resolución de Consulta de Ubicación Sustituta* promulgada el 29 de febrero de 2024 por la OFICINA DE PERMISOS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN (**OPMASJ**).

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón disiente con el resultado sin opinión escrita. La Jueza Boria Vizcarrondo concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones